**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARLES MALONE,

Plaintiff,

vs. CASE NO. 3:07-cv-696-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

______________________________________

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income payments ("SSI"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I. Procedural History

On May 23, 2005, Plaintiff filed applications for a period of disability, DIB, and SSI benefits (Tr. 73-81). Plaintiff's applications were denied initially and upon reconsideration (Tr. 33-44). Pursuant to Plaintiff's request, an administrative hearing was conducted on August 22, 2006, in Jacksonville, Florida, before Administrative Law Judge JoAnn L. Anderson (the "ALJ") (Tr. 361-408). The ALJ found Plaintiff was not disabled by decision dated December 5, 2006 (Tr. 17-26). On June 22, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Plaintiff now appeals under 42 U.S.C. Section 405(g).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while

---

[1] All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by

substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. §§ 404.704;416.912(c).

## III. Background Facts

Plaintiff was 52 years old at the time of the ALJ's decision (*see* Tr. 73). Plaintiff has a high school education and past relevant work as a laborer; sales route driver; building material sales attendant; substance abuse counselor; retail store manager; automobile salesperson; gate guard; heavy truck driver; general merchandise salesperson; and merchandise deliverer (Tr. 157).

### A. Medical Evidence

Plaintiff alleges disability as of August 15, 2003 due to hepatitis C and osteoarthritis (Tr. 29). From June 30, 1999 to December 27, 1999, Joe B. Linker III, M.D. ("Dr. Linker") was Plaintiff's treating physician (Tr. 272). On December 27, 1999, Dr. Linker noted that

he had been treating Plaintiff for chronic back pain for the past year, and that Plaintiff's chronic hepatitis C compounds Plaintiff's back pain (Tr. 272). Dr. Linker also noted that Plaintiff had been self-increasing his dosage of Oxycontin 20mg tablets to two or three per day above what was called for by his prescription (Tr. 272). Plaintiff admitted he took more medication than directed, stating he needed "something else" for the pain (Tr. 272). According to Dr. Linker, Plaintiff had "historic reasons" to be in pain, and his treatment included epidural injections (Tr. 273). Dr. Linker referred Plaintiff to another physician in order to maximize management of Plaintiff's chronic low back pain (Tr. 272).[2]

Plaintiff sought treatment for "all over joint pain" on March 28, 2001 (Tr. 249). It was noted by David J. Hewitt, M.D. ("Dr. Hewitt") that Plaintiff was experiencing end stage liver disease secondary to hepatitis C (Tr. 249). Plaintiff reported that he experienced lower back pain that radiated down his right leg, and that his pain was worse in the early morning, improved during the day, and worsened by the end of the workday (Tr. 249). Dr. Hewitt also noted that Plaintiff continued to work full-time at Lowe's as a lawn and garden specialist (Tr. 249).

On April 20, 2001, an MRI was performed on Plaintiff's lumbar spine (Tr. 247). The MRI revealed bilateral defects at L5 with grade I anterolisthesis of L5 on S1 and secondary degenerative disc disease (Tr. 247). The MRI also revealed a mild neural foraminal narrowing at L5-S1, right greater than left (Tr. 248).

[2] The record is unclear as to who Plaintiff was referred. The letter of referral was addressed to Dr. Mark Ellis (Tr. 272).

From July 18, 2001 to December 10, 2001, Plaintiff was seen at Monroe Medical and Wellness clinic for treatment of chronic low back pain (Tr. 300-39). On September 26, 2001, Plaintiff was seen for lower back pain (Tr. 313-14). Plaintiff was assigned temporary work restrictions, which included no repetitive bending, stooping, or twisting, and a lifting limit of five (5) pounds (Tr. 313-14). The restrictions were to be in effect from September 26, 2001 until October 10, 2001 (Tr. 314). Plaintiff was seen again on October 15, 2001 for complaints of lower back pain and the aforementioned work restrictions were extended until November 25, 2001 (Tr. 306-07).

From December 3, 2002 through December 10, 2002, Plaintiff was hospitalized at Athens Regional Medical Center for osteomyelitis with staphylococcal septicemia after presenting to the emergency room with complaints of severe back pain (Tr. 160). Plaintiff was additionally diagnosed with hypertension, nicotine addiction, chronic hepatitis C and a history of IV drug abuse and drug-seeking behavior (Tr. 160). An MRI performed on December 3, 2002 revealed grade I spondylolisthesis at L5-S1, osteomyelitis, a presacral abscess involving the right piriformis muscle and small broad based disc herniation at L3-4 (Tr. 183). X-rays of Plaintiff's lumbar spine revealed degenerative disc disease at L5-S1 (Tr. 184). Paul D. Martin, M.D. ("Dr. Martin") noted that "I [Dr. Martin] suspect that all his problems are infectious or existing problems, which are exacerbated by infection" (Tr. 177).

On February 12, 2003, Plaintiff presented to the Athens Regional Medical Center emergency room with right hip and back pain and wanting detoxification (Tr. 240).[3] X-rays of Plaintiff's right hip and lumbar spine were obtained (Tr. 241). According to Patricia H.

[3]The emergency room report states that Plaintiff reported using heroin (Tr. 240).

Burgess, M.D. ("Dr. Burgess"), the results were negative for any acute changes compared with prior x-rays (Tr. 241).[4] Plaintiff was released in stable condition without instructions because he left the hospital before he could be given instructions (Tr. 241).

On November 17, 2003, Plaintiff was treated at the Emory Clinic for hepatitis C (Tr. 185). Plaintiff stated that he had been doing well other than severe fatigue and arthritis pain in his hands and lower back (Tr. 186). Dirk P. Slaker, M.D. ("Dr. Slaker") noted that Plaintiff's esophagogastroduodenoscopy ("EGD") results were normal (Tr. 186).[5]

On February 23, 2006, Plaintiff was examined by Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock") at the request of the Social Security Administration (Tr. 24). Plaintiff reported pain on ambulation, blindness in the left eye, and chronic pain in all his joints (Tr. 191). Dr. Harper-Nimock noted that Plaintiff appeared to be in mild distress, his gate was abnormal with limping, he was unable to squat, his lumbar spine showed decreased flexion, extension, lateral flexion, and decreased rotary movement bilaterally, and he had decreased range of motion of his hips and knees bilaterally (Tr. 193-94). Dr. Harper-Nimock further noted that Plaintiff could walk on his heels and toes without difficulty, used no assistive device for ambulation, needed no help changing for the exam or getting on and off the exam table, was able to rise from the chair with minimal difficulty, had 5+/5+ strength in his upper and lower extremities, and 5+/5+ grip strength bilaterally (Tr. 193-94).

---

[4] Although Dr. Burgess noted that there were no acute changes compared with prior x-rays, Daniel L. Measel, M.D. ("Dr. Measel") who signed the radiology report noted that there was slight anterior wedging of the L2 vertabral body suggesting a compression fracture (Tr. 241, 243).

[5] "Esophagogastroduodenoscopy" is defined by *Stedman's Medical Dictionary* as: "an endoscopic examination of the esophagus, stomach, and duodenum usually performed using a fiberoptic instrument." *Stedman's Medical Dictionary*, (William R. Hensyl et al. eds., Williams & Wilkins 27th ed. 2000) (1911).

Dr. Harper-Nimock's diagnosis included the following: history of rheumatoid arthritis; history of chronic hepatitis C; history of degenerative disc disease in lumbar and cervical region; history of radiculopathy to the right leg; history of visual impairment of left eye; history of essential hypertension; and a history of tobacco, ethanol, and substance abuse (Tr. 194). Dr. Harper-Nimock gave Plaintiff a prognosis of fair and noted that Plaintiff had moderate limitations for prolonged sitting, walking, climbing, or heavy lifting (Tr. 195).

X-rays of Plaintiff's cervical spine on February 23, 2006 showed moderate degenerative disc disease and associated degenerative changes (Tr. 210). On April 18, 2006, Plaintiff was seen at Shands for low back pain (Tr. 349). Plaintiff reported that his symptoms were aggravated by walking; however, he also reported that his pain was well controlled by medication (Tr. 347). On July 31, 2006, an x-ray taken of Plaintiff's lumbar spine revealed an old compression fracture at L2, and severe degenerative disc disease at L5-S1 (Tr. 270). On August 6, 2006, Plaintiff sought treatment at Shands for low back pain (Tr. 340).

On March 7, 2006, state agency medical consultant Donald Morford ("Mr. Morford"), from Disability Determination Services ("DDS"), completed a Residual Functional Capacity ("RFC") assessment of Plaintiff (Tr. 201-08). Mr. Morford noted that Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, could stand and/or walk about six (6) hours in an eight (8) hour workday, could sit about six (6 )hours in an eight (8) hour workday, and that Plaintiff had unlimited push/pull capabilities (Tr. 202). Mr. Morford also noted that Plaintiff had symptoms and complaints that seemed to slightly exceed the objective findings in the medical evidence of record (Tr. 206).

**B. The ALJ's Decision**

In her opinion dated December 5, 2006, the ALJ found Plaintiff suffered from rheumatoid arthritis, hepatitis C, degenerative disc disease of the cervical spine, a history of an old compression fracture at L2, and degenerative disc disease at L5-S1 (Tr. 22). The ALJ found Plaintiff's impairments to be severe within the meanings of the Regulations (Tr. 22). The ALJ went on to find, however, that the aforementioned impairments, either alone or in combination, did not meet or equal an impairment listed in 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Tr. 23). After careful consideration of the entire record, the ALJ found Plaintiff retained the RFC to lift and carry ten (10) pounds occasionally and less than ten (10) pounds frequently, able to sit for up to six (6) hours in an eight (8) hour workday (no longer than thirty (30) minutes at one time), and able to stand and/or walk for up to two (2) hours in an eight (8) hour workday (no longer than thirty (30) minutes at one time) (Tr. 23).

After determining Plaintiff's RFC and taking testimony from vocational expert, Melissa Brooks (the "VE"), the ALJ found Plaintiff could perform his past relevant work as a substance abuse counselor (Tr. 24). The ALJ further found despite Plaintiff's work restrictions, Plaintiff could adjust to other work that existed in substantial numbers in the national and local economy (Tr. 25). Relying on the testimony of the VE, the ALJ found that based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform representative occupations, such as information clerk and telephone solicitor (Tr. 25). *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 237.367-022, 299.357-014 (4th Ed. 1991). Based in part on the VE's testimony and after finding Plaintiff's allegations concerning the intensity, persistence, and limiting effect of his symptoms not entirely creditable, the ALJ found Plaintiff was not under a disability as

defined by the Social Security Act ("the Act") (Tr. 24, 26).

## IV. Analysis

Plaintiff argues the ALJ erred by determining his testimony regarding his subjective complaints of pain was not entirely credible (Doc. #16 at 1). The Court, however, is not persuaded by this argument. The Court finds the ALJ properly discounted Plaintiff's complaints of disabling pain by articulating several reasons for finding Plaintiff's subjective complaints not entirely credible. In addition, the undersigned finds the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints of pain are supported by substantial evidence of record.

When considering Plaintiff's credibility, pain and subjective symptoms alone can be impairments which result in a claimant being disabled. *Marbury v. Sullivan*, 957 F. 2d 837, 839 (11th Cir. 1992). A reviewing court decides whether the Commissioner's findings are consistent with the proper legal standard and are supported by substantial evidence. *Bridges v. Bowen*, 815 F. 2d 622, 624-25 (11th Cir. 1987). 42 U.S.C. § 423 (d)(5)(A) sets forth the conditions by which a claimant's subjective symptoms of pain may establish a disability.

The Eleventh Circuit has interpreted the aforementioned statute to require the Commissioner to consider a claimant's subjective testimony if the claimant has established: (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain or restrictions arising from that condition, or (3) evidence that the objectively determined medical condition is such that it can be reasonably expected to give rise to the claimed pain or restriction. *Foote*, 67 F.3d at 1560-61; *Marbury*, 957 F. 2d at 839; *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991).

When a plaintiff's credibility is at issue and the Commissioner rejects a plaintiff's allegations of pain, "[the ALJ] must articulate explicit and adequate reasons" for doing so. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988). In *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987), the Court stated that, when a claimant's testimony is critical, the ALJ must articulate adequate reasons for questioning the claimant's credibility. *Allen v. Sullivan*, 880 F.2d 1200, 1202-03 (11th Cir. 1989); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987). Furthermore, the reasons given for discrediting a plaintiff's pain testimony must be based on substantial evidence. *Jones v. DHHS*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In the instant case, the ALJ determined Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. In support of this determination, the ALJ articulated three reasons for discounting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms. Specifically, the ALJ referenced the reports of Plaintiff's treating and examining physicians, Plaintiff's work activities, and Plaintiff's description of his daily activities and lifestyle (Tr. 23-6).

In reference to the reports of treating and examining physicians, the ALJ noted that Dr. Harper-Nimock, who examined Plaintiff on February 23, 2006, observed that Plaintiff appeared to be in mild distress and walked with a limp (Tr. 24). The ALJ noted that Dr. Harper-Nimock reported Plaintiff used no assistive device to ambulate and that he was able to sit and stand without difficulty (Tr. 24). After physical examination, Dr. Harper-Nimock noted that Plaintiff had moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting (Tr. 24). The ALJ found Dr. Harper-Nimock's findings were consistent with Plaintiff's medical history and objective findings, and that those findings are

consistent with the ability to perform sedentary work (Tr. 24).

In reference to Plaintiff's work activities, the ALJ noted that, at the hearing, Plaintiff testified he currently worked as a gate guard at the Rescue Mission for two (2) to six (6) hours per day (Tr. 24). Plaintiff testified he probably worked two (2) hours per day, but there were times when he worked up to six (6) hours per day (Tr. 371). When asked what factors determined how long he worked as a gate guard, Plaintiff responded that no one worked for more than six (6) hours per week unless someone was either sick or left the program. If someone was either sick or left the program, then Plaintiff could work more hours (Tr. 372).

Finally, in reference to Plaintiff's own description of daily activities, the ALJ found his daily activities were not consistent with his allegations of pain and that his activities were consistent with at least sedentary work (Tr. 24). *See* 20 C.F.R. § 404.1529(c)(3)(i) (pattern of daily living is an important indicator of the intensity and persistence of symptoms). Specifically, the ALJ noted that Plaintiff reported he woke up at 5:45 or 6:00 a.m., worked, made lunch, and took a nap (Tr. 24). Plaintiff testified that he does laundry every three (3) to four (4) days, watches television, reads, listens to instructional tapes, and socializes with his friends (Tr. 24). Plaintiff further testified that on weekends he attends church, reads the Sunday paper, watches television, or studies the bible (Tr. 388). The ALJ found Plaintiff's ability to participate in the aforementioned activities is consistent with at least sedentary work (Tr. 24).

Additionally, the undersigned's independent review of the record demonstrates the ALJ's decision to discredit Plaintiff's subjective complaints of pain is supported by substantial evidence. Specifically, the record supports the ALJ's determination that Plaintiff

can engage in sedentary work.[6] The Court notes the majority of Plaintiff's treating and examining physicians, while acknowledging Plaintiff experienced pain, did not place any restrictions on Plaintiff's ability to perform work activities (Tr. 160, 187, 241, 249). Although Plaintiff had work restrictions in 2001,[7] those restrictions were temporary and expired on November 25, 2001 (*see* Tr. 306-7, 314). The only other examining physician to place work restrictions on Plaintiff was Dr. Harper-Nimock, who noted Plaintiff had moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting, and that he was unable to squat (Tr. 193-95). Plaintiff's own testimony, however, undermines Dr. Harper-Nimock's opinion that Plaintiff is unable to squat. Specifically, Plaintiff stated at the hearing, "I'll squat, you know, to pick something up, but I don't bend over to pick anything up no more" (Tr. 384).

Furthermore, the ALJ's RFC findings are consistent with the findings of state agency medical consultant, Mr. Morford, who conducted an RFC assessment of Plaintiff on March 7, 2006 (Tr. 208). Mr. Morford concluded that Plaintiff could occasionally lift twenty (20) pounds and frequently lift ten (10) pounds (Tr. 202). Mr. Morford also found Plaintiff could stand or walk about six (6) hours in an eight (8) hour workday and sit for about six (6) hours in an eight (8) hour workday (Tr. 202). Mr. Morford additionally noted that Plaintiff's symptoms and complaints seemed to slightly exceed the objective findings in the medical

---

[6] Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 CFR 404.1567(a).

[7] The 2001 work restrictions were no repetitive bending, stooping, twisting, and a lifting limit of five (5) pounds (Tr. 307, 314).

evidence of record (Tr. 206).

In this case, the Court finds the ALJ clearly articulated at least three reasons for discounting Plaintiff's statements regarding the disabling nature of his pain, and that the reasons articulated by the ALJ are supported by substantial evidence. If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

## V. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of September, 2008.

Thomas E. Morris
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Counsel of Record